IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE:<br><br>ALDEN H. ZUHLKE and<br>LISA A. ZUHLKE,<br><br>            Debtors.<br>_____<br><br>PHILIP M. KELLY, CHAPTER 7 TRUSTEEE,<br><br>            Plaintiff,<br><br>v.<br><br>ALDEN H. ZUHLKE, LISA A. ZUHLKE, DEREK A. ZUHLKE and KIMBERLY A. ZUHLKE, DILLAN A. ZUHLKE and MICHELLE L. ZUHLKE,<br><br>            Defendants. | Case No. BK 24-40267-BSK<br>(Chapter 7)<br><br><br><br><br><br>Ad. Proc. 24-4011-BSK<br><br>**JOINT PRELIMINARY PRETRIAL STATEMENT** |

COMES NOW Plaintiff Philip M. Kelly, Chapter 7 Trustee (the "Plaintiff" or the "Trustee") and the Defendants, Derek A. Zuhlke and Kimberly A. Zuhlke ("Derek and Kimberly") and Dillan A. Zuhlke and Michelle L. Zuhlke ("Dillan and Michelle") and submit the following Joint Preliminary Pretrial Statement.

**1.    Summary of alleged facts, Plaintiffs' theories of recovery and Defendant's defenses.**

**Summary of Facts as Alleged by Plaintiff**

This litigation arises out of a pattern and practice of fraud perpetrated by Alden H. Zuhlke and Lisa A. Zuhlke ("Alden and Lisa" or the "Debtors") and their children, including the Defendants herein, to divest the Debtors of substantially all of their assets. The Debtors began doing so when Rabo Agrifinance LLC ("Rabo") began collection proceedings on an agricultural operating line of credit it had extended to the Debtors. On October 25, 2020, Rabo filed a replevin action in the District Court of Antelope County, Nebraska, Case No. CI 20-62 (the "Replevin Action") seeking possession of its collateral, including livestock, inventory and equipment. The Sheriff of Antelope County

took possession of the collateral that he could locate, however, the sheriff was unable to locate a material amount of Rabo's collateral, including livestock that the Debtors represented they had in their possession. Rabo, believing that the Debtors had transferred the missing collateral to their sons, Dillan and Derek, amended its Complaint to name Derek and Dillan as additional defendants in the Replevin Action. The collateral that the Sheriff was able to locate was liquidated, however, no livestock was ever recovered.

On September 9, 2020, Rabo conducted a trustee's sale of real property pledged by the Debtors. On December 8, 2020, Rabo filed an action in the District Court of Antelope County, Nebraska, Case No. CI 20-83 (the "Deficiency Action") seeking a deficiency judgment against the Debtors. On October 6, 2022, a judgment was entered in the Deficiency Action in the amount of $3,267,588.59.

Unbeknownst to Rabo, the Defendants were conspiring to transfer farmland and improvements to Derek and Dillan for less than fair value. On May 19, 2021, while the Deficiency Action was pending, the Debtors sold land, which included a residence, grain storage facilities, and machinery sheds to Dillan and Michelle for $267,556, which the Debtors valued at $422,082 in a December 31, 2017, balance sheet.

On January 18, 2022, Derek and Kimberly purchased farmland from the Debtors, paying $1,683,605 for land which Derek and Kimberly's lender's appraisal shows to be worth in excess of $2.35 million and which the Debtors valued at $2,434,527 in a December 31, 2017, balance sheet.

On March 31, 2022, Dillan and Michelle purchased farmland from the Debtors, paying $1,298,935 for land which Dillan and Michelle's lender's appraisal shows to be worth $2,016,000. The appraiser noted "The subject property is currently under a purchase contract between Dillan & Michelle Zuhlke and Alden & Lisa Zuhlke for $1,673,485. The sale is not an Arms Length Transaction and was not advertised prior to the sale. The sale is between related parties. Due to the sale being between related parties, the value indication is significantly higher than the sales price reflected in the purchase agreement."

The transactions occurred while the Deficiency Action was pending and Alden and Lisa were insolvent. Alden and Lisa did not receive a reasonably equivalent value in exchange for the transfers. Alden and Lisa transferred the land to Defendants with

the actual intent to hinder, delay or defraud their creditors, including Rabo. The transactions are therefore avoidable under Neb. Rev. Stat. § 36-805(a) and § 36-806(a).

Presumably to equalize the transfers among family members, the Debtors transferred cash to another child, Darin Zuhlke and to entities controlled by Darin Zuhlke, in transactions disguised as loans. The Debtors transferred $60,000 to Zuhlke Properties, LLC, owned by Darin Zuhlke, under a "loan" evidenced by a promissory note dated July 1, 2021. The Debtors deposited excess proceeds from the sale of their land to an account held in the name of Joysprings Properties, LLC ("Joysprings") an entity formed by the Debtors. Joysprings was formed by the Debtors' attorney who was defending Rabo's collection actions four days before the scheduled closing date of the sale of the Debtors' farmland to Derek and Kimberly. Following the March 31, 2022, closing on the sale of farmland to Dillan and Michelle, the Debtors deposited excess sale proceeds to an account owned by Joysprings, which then made a $100,000 "loan" to Darin Zuhlke under a promissory note dated April 20, 2022. Mr. Zuhlke admitted during the course of the recent 341 hearing that this was improper. Joysprings also made a "loan" of $47,457.52 to Darin Zuhlke under a promissory note dated January 20, 2023.

The Debtors purported to assign all of their membership interests in Joysprings to their other son, Christian Zuhlke, pursuant to an assignment dated January 31, 2023. Mr. Zuhlke admitted that Darin Zuhlke is making the payments on the "loans" to the Debtors and not to Joysprings. The Debtors also transferred vehicles to Joysprings.

The Debtors wanted to file their bankruptcy case after the two-year limitation set forth in Section 546(a) had passed because, in the opinion of former counsel, the transfers to Defendants were "suspect". However, the Debtors were forced to file their bankruptcy case before the two-year limitation set forth in Section 546(a) had passed because Rabo levied execution on approximately 100 acres of farmland owned by the Debtors. Having stayed the execution sale, the Debtors then asked prior counsel to dismiss their Chapter 12 petition and refile the case after the two-year limitation set forth in Section 546(a) had passed.

The Debtors concealed from their prior counsel, their creditors and the Bankruptcy Court Lisa Zuhlke's ownership of 11.764% of the issued and outstanding capital stock of Sunshine Ranch Co. Inc., a family farming corporation formed by Lisa's grandfather, Sumner B. Hall, in 1965 ("Sunshine"). Sunshine owns significant holdings of farm ground in Antelope and Pierce Counties as well as cash, accounts, farm products

and machinery and equipment. Sunshine's most recent balance sheet shows that the owner's equity in the corporation is $16,438,101. The balance sheet does not appear to value Sunshine's assets at fair market value.

The Debtors knowingly and deliberately concealed Lisa's ownership in Sunshine, even though former counsel advised them, in writing, to review their schedules carefully and if anything was incorrect, or if they had questions, to not sign the schedules. Former counsel also warned the Debtors that if they signed their schedules, he would assume all of the information therein was correct. Nevertheless, the Debtors signed their schedules, which did not disclose their most significant asset-Lisa's stock in Sunshine.

The Debtors' former counsel learned of the Sunshine stock on July 23, 2024, as he was preparing the Debtors for their first meeting of creditors. The Debtors were not only evasive about Lisa's stock in Sunshine, but "adamant" that they did not wish to disclose the stock to the Court. It took more than two weeks for the Debtors to authorize former counsel to disclose the stock to the trustee. By then, the former counsel had moved to withdraw from the case. Lisa Zuhlke admitted that she did not authorize former counsel to disclose her ownership in Sunshine until August 7, 2024, after she knew that Rabo had discovered this valuable asset. On August 7th former counsel sent an email to the trustee and to counsel for Rabo informing them that he had not previously been able to convince the Debtors to disclose the interest in Sunshine, but that he was doing so to satisfy his duty of candor to the tribunal.

Rabo took debtors' examinations of Alden and Lisa in the Deficiency Action. It is now known that the Debtors' testimony was untruthful, as they concealed from Rabo (and their creditors in their bankruptcy case) Lisa Zuhlke's stock in Sunshine. The Debtors also concealed from Rabo: (a) the Debtors' ownership in Swine 84, a partnership that produces iso wean pigs, which the Debtors December 31, 2017, balance sheet valued at $408,511; (b) the Debtors' ownership in Bloomfield, LLC; (c) the Debtors' ownership in H&H Farms; (d) the Debtors' ownership in Joysprings to which the Debtors transferred vehicles and substantial amounts of cash; (e) the Debtors' ownership in Hartington, LLC; and (f) the Debtors' ownership in Diamond Z Farms. The Debtors also failed to disclose cash transfers to family members, including substantial transfers of cash to their son, Darin Zuhlke and to Zuhlke Properties, LLC.

Similarly, the Debtors were not forthright during the first meeting of creditors conducted in their Chapter 12 case. The Chapter 12 Trustee asked a number of

questions about the various entities in which the Debtors had an interest, and the Debtors did not disclose Lisa Zuhlke's stock in Sunshine. Mr. Overcash directed the Debtors to amend their schedules to list each entity in which they had an interest. The Debtors did not disclose the stock in Sunshine when they amended their schedules.

Mrs. Zuhlke was not forthright in her testimony during the first meeting of creditors in their Chapter 7 case, claiming to not know the identity of the other shareholders in Sunshine. Yet Mrs. Zuhlke told former counsel on July 23rd that her brother was a shareholder in Sunshine.

The Debtors have allowed Derek and Dillan to farm two tracts of land comprising approximately 100 acres of irrigated crop land owned by the Debtors. Mr. Zuhlke testified during the first meeting of creditors in their Chapter 12 case that Derek and Dillan rented the land from the Debtors in 2023 and 2024 on a crop share basis. The Debtors produced crop share leases with Derek and Dillan for this land, purportedly executed on December 30, 2023. The leases provide that the leases "shall not be effective or enforceable by either party unless the United States Bankruptcy Court for the District of Nebraska approves the assumption of this lease by Owner, who is currently in a Chapter 12 bankruptcy." The Debtors' bankruptcy case was filed on March 27, 2024, or nearly three months after the purported execution of the leases. The leases are therefore post-dated and further evidence intent to defraud.

The Debtors have sold or otherwise disposed of significant amounts of livestock that secured Rabo's loan. The Debtors sold iso wean pigs to Select Swine under the name of Swine 84. While Swine 84 was the purported seller of the pigs, Select Swine issued a number of checks directly to Alden Zuhlke, thus avoiding payment of the proceeds to Rabo. This too evidences the Zuhlkes' fraudulent intent.

Rabo filed a motion for a Rule 2004 examination of the Debtors (Doc. 15), which was granted. The motion sought, among other things, all documents relating to the sale or other disposition of the Debtors' livestock. The Debtors had represented to Rabo that they were in possession of 2,995 hogs valued at $341,300.00, yet when the Sheriff attempted to take possession of the hogs, there were none. Mr. Zuhlke testified in his debtor's examination that he could obtain records of the Zuhlkes' hog sales from his accountant. During the course of the first meeting of creditors in their Chapter 12 case, Mr. Zuhlke promised to produce these documents by June 15, 2024. The Debtors failed to do so. When asked about the production of these records during the first meeting in

the Debtors' Chapter 7 case, Mr. Zuhlke claimed that the Debtors lost the records when they moved from their prior residence. This had not previously been articulated by the Debtors and is wholly inconsistent with Mr. Zuhlke's testimony that he could obtain the records from his accountant or that he would produce the records by June 15th. Regardless, Mr. Zuhlke admitted during the first meeting of creditors in the Chapter 7 case that the Debtors sold livestock and diverted the proceeds to their personal use. The Debtors' failure to produce records and their unauthorized use of the proceeds is also evidence of the Debtors' fraudulent intent.

The Trustee will prove at trial, by a preponderance of the evidence, that the Debtors and the Defendants participated in a scheme to put substantially all of the Debtors' assets beyond the reach of the Debtors' creditors and that the Debtors had the actual intent to defraud their creditors. The transactions are therefore avoidable under Neb. Rev. Stat. § 36-805(a). In determining the Debtors' actual intent under Section 36-805(a), the Court may consider, among other factors, (1) the transfers were to their children Derek and Dillan, who are "insiders"; (3) the transfers were concealed; (4) before the transfers were made or obligation was incurred, the Debtors had been sued by Rabo; (5) the transfers were of substantially all the Debtors' assets; (7) the Debtors removed or concealed assets; (8) the value of the consideration received by the Debtors was not reasonably equivalent to the value of the assets transferred by the Debtors to the Defendants; (9) the Debtors were insolvent or became insolvent shortly after the transfers were made; that the transfers to the Defendants were accompanied by transfers of substantial sums of money and property to the Debtors' other children; that the Debtors have been dishonest in their testimony before this Court and the District Court of Antelope County, Nebraska, concerning the transfers and their assets; and that the Debtors have concealed from this Court Lisa's ownership in Sunshine.

The transactions are also avoidable under Neb. Rev. Stat. § 36-806(a), which only requires that the Trustee prove by a preponderance of the evidence that (1) a creditor, such as Rabo, held a claim against the Debtors before the transfers were made; (2) the Debtors made the transfers to Defendants without receiving a reasonably equivalent value in exchange for the transfers; and (3) the Debtors were insolvent or became insolvent as a result of the transfers to Defendants.

**Plaintiff's Theories of Recovery**

Plaintiff seeks, in his First Claim for Relief, avoidance of the transfer of N½ SW¼ of Section 19, the NW¼ of Section 30, all in Township 27 North, Range 5 West of the 6th P.M., Antelope County, Nebraska AND the N½NE¼ of Section 25, Township 27, Range 6 West of the 6th P.M., Antelope County, Nebraska as well as the Agreement and Easement dated January 7, 2022, under Neb. Rev. Stat. § 36-805(a) and § 36-806(a).

Plaintiff seeks, in his Second Claim for Relief, avoidance of the transfer of property described as a tract of land lying wholly in the Southeast Quarter of the Northeast Quarter of Section 29, Township 27 North, Range 5 West of the 6th P.M., Antelope County, Nebraska. Said tract is more particularly described as follows: Beginning at a point on the East line of said Section 29, which is 1542.07 feet South of the Northeast Corner of said Section 29; thence continuing South along said East line, on an assumed bearing of South 00 degrees 00 minutes 00 seconds East, 1095.85 feet; thence North 89 degrees 49 minutes 25 seconds West, 546.78 feet; thence North 00 degrees 34 minutes 05 seconds East, 545.08 feet; thence North 89 degrees 48 minutes 10 seconds West, 125.36 feet; thence North 01 degrees 54 minutes 30 seconds West, 514.44 feet; thence North 87 degrees 05 minutes 45 seconds East, 684. 74 feet to the point of beginning; EXCEPT a tract of land in the Southeast comer of the Northeast Quarter of Section 29, Township 27 North, Range 5 West of the 6th P.M., Antelope County, Nebraska, described as commencing at the Southeast comer of said Northeast Quarter; thence West on the Quarter Section line, 550 feet; thence North parallel to the East Section line 320 feet; thence East 550 feet to the Section line, thence South 320 feet to the point of beginning, under Neb. Rev. Stat. § 36-805(a) and § 36-806(a).

Plaintiff seeks, in his Third Claim for Relief, avoidance of the transfer of property described as the SW¼ and the N½SE¼ of Section 24, Township 27 North, Range 6 West of the 6th P.M., Antelope County, Nebraska as well as the Agreement and Easement dated January 7, 2022, under Neb. Rev. Stat. § 36-805(a) and § 36-806(a).

### Defendants' Defenses

Defendants dispute Plaintiff's "summary" of the allegations and contend that many of the facts alleged in this matter are mischaracterized and/or taken out of context to fit within Rabo's narrative of a "conspiracy." Further, much of the "summary" above set forth contains facts that have no relevance to the claims asserted against Defendants and should be disregarded for purposes of this case.

Since the early 1980s, Debtors, Alden and Lisa Zuhlke, owned a farming operation which included row crops and livestock. Alden and Lisa owned farming equipment in addition to various tracts of farmland. At all times relevant to this litigation, Lisa and Alden are believed to be owed roughly $2.7 million to MetLife, which was secured by certain farmland. It is believed that Lisa and Alden were required to make annual payments of $200,000 to MetLife to service the debt they owed to it, in addition to incurring related costs and taxes for the farmland which in total are estimated to be around $50,000 a year.

In 2020, Rabo commenced the Deficiency Action against Lisa and Alden. By the end of 2021, Rabo had levied against all farming equipment owned by Lisa and Alden, significantly limiting their ability to meet their annual obligations to MetLife. In light of their financial concerns, Alden and Lisa asked if Derek and Dillan, and their spouses were interested in purchasing five tracts of land, all of which are at issue in this case. The five tracts were sold in three transactions which are explained as follows:

**Transaction 1** – described as SE1/4 NE1/4 29-27-5 and consisting of 11.69 acres. In 2021, Farm Credit had performed an appraisal of the of the tract and estimated that its fair market value was $630,000. The $630,000 value included certain improvements, all of which Derek and Kimberly had made to the tract prior to their purchase. Those improvements were valued under the Farm Credit appraisal at roughly $362,000. Because that amount had been previously paid for by Derek and Kimberly, Alden and Lisa agreed to deduct that value from the sale price. Derek and Kimberly purchased Tract 1 in April, 2021, for the amount of $267,556. Rabo was notified, through counsel, of Lisa and Alden's sale of this property to Derek and Kimberly.

**Transaction 2** – consisted of three tracts which are described as N ½ SW1/4 19-27-5, N1/2 NE1/4 25-27-6 and NW1/4 30-27-5 in Antelope County, NE. Combined, the three tracts total roughly 306 acres. Alden and Lisa owed roughly $1.46 million to MetLife, which had a first lien on the property in January, 2022. Based on recent land sales of like-kind property, Lisa and Alden agreed to sell Derek and Kimberly the property in early, 2022, for $5,500 per acre for a total purchase price of $1.683 million. Of the purchase price, roughly $1.461 million was paid to satisfy MetLife's lien. The balance of the purchase price was seller-financed. Derek and Kimberly are current on all obligations

owed to Lisa and Alden on the seller-financed note, and all payments have been paid directly to Rabo consistent with prior Court Orders. Rabo, furthermore, was aware of the sale to Derek and Kimberly. The sale was a matter of a public record and nothing about the sale was concealed.

**Transaction 3** – consisted of two parcels described as SW1/4 24-27-6 and N1/2 SE1/4 24-27-6 in Antelope County, NE. The two parcels total roughly 236 acres. As with Tract 2, MetLife had a first lien on the parcel. Based on recent land sales of like-kind property, Lisa and Alden agreed to sell Dillan and Michelle the Tract for $5,500 per acre for a total purchase price of $1.299 million. Of the purchase price, roughly $1.192 was paid to satisfy MetLife's lien. The balance was paid to Lisa and Alden. Rabo was aware of the sale to Dillan and Michelle. The sale was a matter of a public record and nothing about the sale was concealed.

None of the amounts paid by Derek, Dillan and their spouses for the tracts described above included irrigation equipment. Indeed, Derek and Dillan purchased the irrigation equipment in separate transactions, reflected by separate bills of sale, from Rabo. Rabo signed the Bills of Sale for that equipment and the sale prices were negotiated by Derek and Dillan with Rabo.

In the fall of 2022, after the sale of the Tracts described above, Rabo was granted a deficiency judgment against Lisa and Alden.

Further, Dillan, Derek and their spouses have never purchased, taken possession and/or otherwise had any interest in any hogs owned by Lisa and Alden. Rabo's insinuation to the contrary is without any factual basis.

Derek, Kimberly, Dillan and Michelle contend that their purchase of the property at issue and as further explained in the three transactions above were made in good faith and for reasonably equivalent value.

In addition, Alden and Lisa were not insolvent at the time they sold the property at issue to Derek, Kimberly, Dillan and Michelle.

**2. Whether the proceeding is core or non-core.**

This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (A), (H) and (O).

**3.    Whether the parties consent to entry of final orders or judgments by**

**a bankruptcy judge.**

The parties consent to the entry of final orders or judgments by a bankruptcy judge.

**4. Whether a demand for a jury trial was made.**

A demand for a jury trial was not made.

**5. Status of discovery.**

The parties are conducting discovery. Plaintiff issued his first set of interrogations, request for production of documents, and requests for admission to defendants Derek, Kimberly, Dillan and Michelle. Experts will need to be designated, and reports prepared. Depositions will need to be taken in the case. In addition, the parties also need to engage in discovery with regard to each party's experts.

**6. Efforts to settle the dispute and mediation.**

The parties have not engaged in settlement discussions or mediation.

**7. Uncontroverted facts.**

a. On March 27, 2024, Alden H. Zuhlke and Lisa A. Zuhlke filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code.

b. On June 25, 2024, the Debtors' case was converted to a case under Chapter 7 of the Bankruptcy Code.

c. Plaintiff is the Trustee of the Debtors' Estate.

d. Derek A. Zuhlke and Dillan A. Zuhlke are the sons of Alden and Lisa.

e. The Debtors' Schedules reflect that there are five other creditors holding nonpriority unsecured claims against the Debtors.

f. These causes of action are brought pursuant to 11 U.S.C. § 544(b).

g. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334

h. This matter is a core proceeding under 28 U.S.C. § 157(b)(2) (A), (H) and (O).

      i.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

      j.      Alden and Lisa executed a Survivorship Warranty Deed, that was recorded with the County Clerk of Antelope County, Nebraska on January 18, 2022.

      k.      Alden and Lisa entered into an Agreement and Easement, that was recorded with the County Clerk of Antelope County, Nebraska on January 27, 2022, in Book 76 of Misc., Page 392-393.

      l.      Alden and Lisa executed a Warranty Deed, that was recorded with the County Clerk of Antelope County, Nebraska on May 19, 2021.

      m.      Alden and Lisa executed a Survivorship Warranty Deed, that was recorded with the County Clerk of Antelope County, Nebraska on March 31, 2022.

      n.      Alden and Lisa entered into an Agreement and Easement dated March 7, 2022, that was recorded with the County Clerk of Antelope County, Nebraska on April 6, 2022, in Book 76 of Misc., Page 484-485.

**8. Controverted facts and unresolved legal issues.**

      a.      The amount of the consideration that was paid for each "transfer" that Plaintiff seeks to void in the case.

      b.      Whether the transfers were made by the Debtors with the actual intent to hinder, delay or defraud Rabo and the Debtors' other creditors.

      c.      Whether the Debtors received reasonably equivalent value in exchange for the transfers.

      d.      Whether Alden and Lisa were insolvent at the time of any alleged transfer.

      e.      Whether and to what extent any value was given by Derek, Kimberley, Dillan and Michelle, and to what extent those Defendants are entitled to a reduction of any liability assessed and/or interest in the assets transferred.

The parties reserve their right to supplement this list as discovery continues.

**9. Deadline for filing motions for summary judgment.**

      30 days prior to date set for trial.

**10. Expert Disclosure Deadline**

The parties have agreed to disclosure and exchange all experts reports by February 1, 2025.

**11.    Date counsel will be prepared for trial.**

April 1, 2025

**12.    Estimated hours required for trial.**

Two to three days

**13.    Other matters the parties believe the court should know or consider.**

Creditor Rabo Agrifinance, LLC has filed an Objection to the Debtors' discharge, docketed as Adv. Proc. 24-04014 in this Court (the "Discharge Action"). The Trustee and Rabo have sought consolidation for all purposes, including trial of this action and the Discharge Action pursuant to Fed. R. Civ. P. 42 in order to avoid unnecessary cost or delay and for judicial economy, as both actions involve substantially the same witnesses and documentary evidence.

Defendants intend to object to the consolidation of the Discharge Action with the instant case.

PHILIP M. KELLY, CHAPTER 7 TRUSTEE, Plaintiff

By:    /s/ Richard P. Garden, Jr.
Richard P. Garden, Jr. - #17685
John F. Zimmer, V - #26127
CLINE WILLIAMS
WRIGHT JOHNSON & OLDFATHER, L.L.P.
233 South 13th Street
1900 U.S. Bank Building
Lincoln, NE 68508-2095
(402) 474-6900
rgarden@clinewilliams.com
jzimmer@clinewilliams.com

DEREK A. ZUHLKE and KIMBERLY A. ZUHLKE, and DILLAN A. ZUHLKE and MICHELLE L. ZUHLKE Defendants

By:   */s/ Lauren R. Goodman*
Lauren R. Goodman (#24645)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
(402)341-3070
(402)341-0216 (fax)
lgoodman@mcgrathnorth.com
ATTORNEY FOR DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

/s/ Richard P. Garden, Jr.
Richard P. Garden, Jr.

4875-2255-2312, v. 1